579, c. 466), giving that court jurisdiction to entertain an action to recover damages upon or for breach of contract, express or implied, other than a promise to marry.

This court said, in Pache v. Oppenheim, 93 App. Div. 221, 87 N. Y. Supp. 704, Mr. Justice Patterson writing:

"Whether an obligation arising from a quasi contract is one imposed by statute or arising from some general principle of law is immaterial. Assuming that the whole relation is one quasi contractual, and that no contract, as matter of fact, exists at all, yet, for the purpose of a remedy, the quasi contract is considered as if it were an actual contract and, when an action within the limitation of $500 is brought in a Municipal Court on such an obligation, it is an action for damages upon contract and the jurisdiction attaches."

It follows, therefore, from decisions which we regard as controlling, that this is an action at law brought to recover a judgment for a sum of money only upon an implied contract within the meaning of the New York Municipal Court act (section 1, c. 580, Laws 1902).

The determination of the Appellate Term and the judgment of the Municipal Court should, therefore, be reversed, and the demurrer to the complaint overruled, with costs in this court and the court below to the appellant, with leave to the respondent, upon payment thereof, to withdraw the demurrer and answer over within eight days. All concur.

---

(120 App. Div. 679)

UNITED STATES MORTGAGE & TRUST CO. v. EASTERN IRON CO. et al.

(Supreme Court, Appellate Division, Third Department. June 25, 1907.)

CORPORATIONS — MORTGAGES—AFTER-ACQUIRED PROPERTY—STATUTORY PROVISIONS—PRIORITY OF LIENS.

    Laws 1892, p. 1824, c. 688 (Stock Corporation Law) § 2, authorizes stock corporations to borrow money when necessary for the transaction of their business, or for the exercise of their corporate franchise, to issue their obligations for the amount so borrowed, and to mortgage their property to secure the payment of such obligations. To secure the payment of bonds issued by it, defendant mining corporation gave a mortgage on all its property, including that which might be afterwards acquired. At the time the mortgage was given defendant did not own the fee title to a part of the land described, but did own the iron ore and minerals therein, together with the right to mine and remove the same. Defendant contracted for the erection of some houses on the part not owned in fee, and thereafter, but subsequent to the acquisition of the fee title, such part was sold under judgment in an action to foreclose the contractor's lien. The purchasers at the sale were prior thereto notified that the land was subject to the lien of the mortgage. Held, that the mortgage was valid as to the after-acquired property, and that the purchasers at the lien foreclosure sale took subject to the lien thereof.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1871.]

    Kellogg and Sewell, JJ., dissenting.

Appeal from Special Term, St. Lawrence County.

Action by the United States Mortgage & Trust Company against the Eastern Iron Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

The following is the opinion of McLAUGHLIN, J., in the trial court:

This action is brought to foreclose a mortgage on certain real estate in the county of St. Lawrence, given by the defendant, Eastern Iron Company, to secure the payment of 250 bonds of the par value of $1,000 each and interest thereon. The defendants McLear, Orvis, & Lee interposed answers which raise an issue as to the title or interest of the plaintiff in a portion of the land.

There is little dispute as to the material facts involved, and which, so far as material to the question to be determined, are substantially as follows: On the 2d of March, 1903, the mortgage was duly executed by the iron company and delivered to the plaintiff. It conveys "the interests of the mortgagor now held or hereafter to be acquired, whether in fee or by lease-hold or otherwise, in and to all and singular the following described property." Then follows a description of the real estate, consisting of about 260 acres, and then continues: "With full and uninterrupted right of ingress, egress and regress to, from and across said premises and the right to occupy so much of said premises as may be necessary or proper for the purpose of conducting mining operating thereon." It further conveys "all real estate and interest in real estate and rights appertaining thereto and all buildings, erections, plants, machinery, tools, implements and fixtures, all mines, minerals and ore-beds, and all the franchises and property, real or personal or mixed, wheresoever situate, which the mortgagor now owns or shall hereafter acquire, whether in fee simple, absolute or as lessee or assignee therein," and then follow covenants of warranty. The bonds, payment of which the mortgage was given to secure, were subsequently sold, some at par and some at 78, to purchasers for value, and they are now outstanding and remain wholly unpaid, both principal and interest and the whole amount, according to the terms of the mortgage, is due. When the mortgage was given and the bonds sold, the iron company did not own the fee title to about 11 acres of the land described, but did own the iron ore and minerals thereon, together with the right to mine and remove the same. The fee title, however, to this parcel was, subsequent to the execution of the mortgage, acquired by deed of conveyance, dated June 11, 1903, acknowledged on the 3d of July following, and recorded in the St. Lawrence county clerk's office on the 25th of September, 1903. There is nothing to show when this deed was delivered, except in so far as that fact may be inferred from its date, acknowledgment, and record. On the 3d of June, 1903, the iron company made a contract with one Carpenter for the erection of 10 houses on the 11-acre parcel, and for which it agreed to pay him $6,250. Carpenter, immediately following the execution of the contract, commenced work and completed the same on or about the 31st of August, 1903. The iron company paid a part of the contract price, but neglected to pay $1,438, and on the 17th of November, 1903, Carpenter filed a notice of mechanic's lien against the 11-acre parcel for the balance due him and on the 19th of December, 1903, commenced an action to foreclose his lien. The action was prosecuted to and resulted in a judgment of foreclosure on the 25th of May, 1904, in pursuance of which on the 13th of July, 1904, the premises were sold to the defendants, McLear, Orvis & Lee. At and immediately prior to the sale the iron company gave public notice that the land about to be sold was subject to the lien of the plaintiff's mortgage. The defendants McLear, Orvis & Lee had knowledge of the notice thus given, but, notwithstanding that fact, they made their respective purchases and subsequently accepted the referee's deed and paid the purchase price. The answers interposed by them are substantially the same. They allege title under this sale superior to that claimed by the plaintiff. The plaintiff in this action was not a party to that action, and therefore the judgment there obtained in no way affects it. It claims that the fee title which it obtained under the conveyance referred to is superior to that of the defendants McLear, Orvis & Lee under that provision of the mortgage which purports to cover after-acquired property.

The sole question presented, therefore, is whether the provision in the mortgage purporting to convey to the mortgagee after-acquired property is, in equity, sufficient to defeat the claim made by McLear, Orvis & Lee. After a careful consideration of the question, I am convinced that it is. Here was a

mining corporation which required for the prosecution of its business a large amount of capital, and for the purpose of acquiring it issued the bonds and gave the mortgage in suit to secure the payment of the same. The mortgage, upon its face, purports to cover after-acquired property. Such property was real estate in which it, at the time the mortgage was executed, had everything except the naked fee. It was included in and covered by the property described. The iron company had a right to issue its bonds for the purpose of raising money for the prosecution of its business or for the exercise of its corporate right, privileges, or ·franchise, or for any other lawful purpose of its incorporation, and to secure the payment of money thus raised to give a mortgage upon its property. Stock Corporation Law, Laws 1892, p. 1824, c. 688, § 2. This it did, and thereupon the statute, as it seems to me, contemplated that for the money thus obtained real estate thereafter acquired should be pledged for the security of its payment. Prior to the conveyance to the iron company the mortgagee had an equitable claim on property to be acquired which, when the conveyance was in fact made, ripened into a legal one. Fiske v. Potter, 2 Abbott's Court of Appeals, Dec. 138; New York Security & Trust Company v. Saratoga Gas & Electric Company, 88 Hun, 569, 34 N. Y. Supp. 890, s. c., affirmed, 157 N. Y. 689, 51 N. E. 1092.

The law seems to be well settled, at least in this state, that a mortgage given by a railroad corporation which purports to cover after-acquired real estate, and such real estate is acquired, creates in equity a lien upon such property superior to the lien of a subsequent incumbrancer by mortgage or judgment. Seymour v. Canandaigua & Niagara Falls Railroad Company, 25 Barb. 284; Benjamin v. Elmira, Jefferson & Canandaigua Railroad Company, 49 Barb. 447; Stevens v. Watson, 4 Abbott's Court of Appeals, Dec. 302; Platt v New York & Sea Beach Railroad Company, 9 App. Div. 87, 41 N. Y. Supp. 42, s. c., affirmed, 153 N. Y. 670, 48 N. E. 1106. See, also, New York Water Company v. Crow, 110 App. Div. 32, 96 N Y. Supp. 899, and such seems to be the rule applied in the federal courts. Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9,673; Central Trust Company v. Kneeland, 138 U. S. 419, 11 Sup. Ct. 357, 34 L. Ed. 1014.

I can see no reason why the rule applicable to railroad corporations is not equally applicable, under the statute as it now exists, to corporations similar to the iron company. The statute giving to the iron company the right to mortgage its property (Stock Corporation Law, § 2), is certainly not less broad in this respect than the one giving a railroad company the right to mortgage its property (Laws 1892, p. 1384, c. 676, § 4, subdiv. 10). This view is not in conflict wth the rule laid down in Rochester Distilling Company v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635, and the other authorities cited by the defendants. The Rochester Case is based upon the rule that a mortgage of chattels, having no actual or potential existence when the mortgage is given, is void as to intervening creditors, and this is fairly illustrative of the other cases cited. But this rule has no application to a mortgage of the character of the one here under consideration. The contesting defendants do not stand in the position of innocent purchasers for value. They not only had constructive notice of the claim of the plaintiff that the 11-acre parcel was covered by the mortgage because it was included in the description, but they also had actual notice prior to the sale that a claim was made that such parcel was in fact covered by it. Salmon v. Norris, 82 App. Div. 362, 81 N. Y. Supp. 892; Schneider v. Mahl, 84 App. Div. 1, 82 N. Y. Supp. 27. Only innocent purchasers for value, without notice, can defeat a mortgage, unless it be fraudulent. At most, the defendants here contesting can only claim what Carpenter could, had he bid in the property at the sale. He did not acquire a lien until the 17th of November, 1903, when his notice of lien was filed, and prior to that time the deed of conveyance to the iron company was given and recorded, and thereupon, if the foregoing views be correct, whatever interest the iron company had was, in equity, vested in the plaintiff to secure the payment of the bonds.

At the trial some evidence was offered to the effect that the houses in question were not necessary in the prosecution of the iron company's business, but, taking all the evidence together, I think it fairly establishes they

were erected, because they were necessary to provide for the workmen employed by the iron company in the prosecution of its business. A finding to the contrary would be against the weight of evidence.

I am of the opinion that the plaintiff is entitled to judgment for the relief prayed for in the complaint.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Thomas Spratt, for appellants.

Davies, Stone & Auerbach (Alexander S. Andrews, of counsel), for respondent.

PER CURIAM. Judgment affirmed, on opinion of McLAUGHLIN, J., at Special Term. All concur, except KELLOGG and SEWELL, JJ., who dissent.

(120 App. Div. 387)

### TOBIN v. ALFRED M. BEST CO.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

1. LIBEL—ACTIONABLE WORDS—INJURY TO BUSINESS.

A complaint which shows that defendant published an article which directly or inferentially charged that a firm of general agents for insurance of which plaintiff was a member, was associated with one who, according to the article, had been notorious for years as a broker of bogus insurance, had been convicted for selling "fake" policies, and served a sentence in jail, states a cause of action for libel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 80–89.]

2. SAME—LIBEL OF PARTNERSHIP—RIGHT OF ACTION BY INDIVIDUAL PARTNER.

Where a partnership is injured by libelous articles, each partner may maintain an action to recover the damages caused to his interest thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 174.]

Appeal from Special Term, New York County.

Action by Stephen R. Tobin against the Alfred M. Best Company. From an order overruling a demurrer to the complaint, defendant appeals. Affirmed. The complaint alleged that defendant had published several libelous articles against the firm of Tobin & Tobin, of which plaintiff was a member, and set forth the articles complained of.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert Van Iderstine, for appellant.

George M. Curtis, for respondent.

PER CURIAM. The complaint states a cause of action. It charges, either directly or inferentially, that the firm of Tobin & Tobin is connected in business with and pursuing the methods of one Anthony, who, according to the articles, has been notorious for years as a broker of bogus insurance, that he was once convicted for selling "fake" policies, and served a sentence in jail. The articles certainly have a tendency to injure the business of the firm by charging that the persons con-